UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>     v.<br><br>PIOQUINTO LARIOS SANTACRUZ, et al.,<br><br>            Defendants. | 1:08-cr-00124-OWW<br><br>ORDER REGARDING DEFENDANT'S MOTION FOR ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL (Doc. 269) |

## I. INTRODUCTION.

On April 23, 2010, a jury convicted Pioquinto Larios Santacruz ("Defendant") of distributing methamphetamine and cocaine, possessing methamphetamine and cocaine with the intent to distribute, and conspiracy.

Defendant filed a motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 or in the alternative for a new trial under Federal Rule of Criminal Procedure 33 on May 7, 2010. (Doc. 269). The United States filed opposition to Defendant's motion on May 20, 2010 (Doc. 284).

## II. FACTUAL BACKGROUND.

On or about November 7, 2008, Defendant was arrested and taken to the Tulare County Jail, where he was interrogated by Todd

1

Keuhnlein ("Keuhnlein"), an agent with the United States Drug Enforcement Agency ("DEA"). Because Defendant did not indicate that he spoke English, Kuehnlein employed the assistance of a Spanish-speaking correctional deputy at the Tulare County Jail, Dario Davalos ("Davalos"). Defendant made incriminating statements during the interview.

Davalos testified at trial that he was working on November 7, 2008 as a booking officer and a floor deputy responsible for classifying inmates. Davalos testified that he speaks Spanish in addition to English. Davalos stated the primary language in his household while he was growing up was Spanish, that he has spoken Spanish his entire life, and that he speaks Spanish at work when booking prisoners. According to Davalos, he routinely serves as an interpreter during prisoner interrogations. Davalos had no specific recollection of interpreting Defendant's interrogation, however, when asked if he served as an interpreter for Kuehnlein, Davalos stated "if that's what he said I did, I did." (Ex. 1 at 6). Davalos testified that he had no independent knowledge of the DEA's investigation of Defendant. Davalos stated that although he could not specifically remember Defendant's interrogation, it was his practice and custom to always read Miranda cards at the outset of the interrogation. Defendant's counsel chose not to cross-examine Davalos.

Kuehnlein's trial testimony included testimony regarding the incriminating statements Defendant made during the November 7, 2008 interrogation. Defendant's counsel objected to Kuehnlein's testimony regarding Plaintiff's statements on the grounds of hearsay and the Sixth Amendment right to confrontation, and after

**2**

a side bar in which the Government and Defendant's counsel each stated their positions, the court overruled Defendant's objections. The court found that Davalos qualified to act as a translator of the Spanish language, admitted Kuehnlein's testimony as a party opponent admission, and instructed Defendant's counsel that although Kuehnlein's testimony was admissible, counsel was free to argue that the weight of the evidence was diminished by the fact that the statements were related through a translator who did not have any memory of the interrogation.

Kuehnlein testified that prior to interrogating Defendant, he spoke to Davalos and told him that any question he asked should be translated to Defendant verbatim. Kuehnlein stated that he had no reason to doubt that Davalos followed his instructions. Kuehnlein testified that through Davalos, Defendant told him his name was Pioquinto Santacruz, and that he also used the alias Noe Rios. Defendant stated that he lived at 162 West Wade in Tualre, California. In response Kuehnlein's questions regarding a drug transaction in September 2006, Defendant stated that he knew a man named Pat, who came to his house with another individual to conduct a drug deal. Kuehnlein testified that he asked Defendant if the transaction was for five pounds of cocaine and five pounds of methamphetamine, and Defendant responded affirmatively. Defendant also indicated that he worked for Hamstra Dairy in Tulare under the name Noe Rios. Defendant was convicted of all three charges against him based in part on Kuehnlein's testimony.

### III. LEGAL STANDARD.

**A. Federal Rule of Criminal Procedure 29**

Federal Rule of Criminal Procedure 29 provides that a judgment

of acquittal is warranted if the evidence is insufficient to sustain a conviction. Fed. R. Crim. P. 29(a). "The evidence is sufficient to support a conviction if, 'viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *E.g. United States v. Magallon-Jimenez*, 219 F.3d 1109, 1112 (9th Cir. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under Rule 29, all reasonable inferences are to be drawn in favor of the government, and any conflicts in the evidence are to be resolved in favor of the jury's verdict. *United States v. Alvarez-Valenzuela*, 231 F.3d 1198, 1201-02 (9th Cir. 2000). When a district court reserves ruling on a Rule 29 motion, it must decide the motion on the basis of the evidence at the time the ruling was reserved; i.e., at the close of the government's case. Fed. R. Crim. P. 29(b).

**B. Federal Rule of Criminal Procedure 33**

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. A motion for a new trial is "directed to the discretion of the district judge" and "should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981). A district court may grant a Rule 33 motion on the basis of constitutional error. *See, e.g., United States v. Cronic*, 466 U.S. 648, 667 n.42 (1984).

///

///

**4**

**IV. <u>DISCUSSION</u>.**

**A. Defendant's Rule 29 Motion**

Defendant's Rule 29 motion must be decided based on the state of the evidence as it existed at the time the court's ruling on the motion was reserved. Fed. R. Crim. P. 29(b). At the time the court reserved its ruling on Defendant's Rule 29 motion, Kuehnlein's testimony regarding Defendant's interrogation had been ruled admissible and was part of the evidentiary record. (Doc. 274, Def. Motion, Ex. 1 at 9-10). If believed, Kuehnlein's testimony constitutes substantial evidence. A rational jury could believe Kuehnlein's testimony regarding Plaintiff's incriminating statements, which were sufficient to prove that Defendant was guilty of the crimes charged against him beyond a reasonable doubt. Accordingly, Defendant's Rule 29 motion is DENIED.

**B.  Defendant's Rule 33 Motion**

  **1.  Hearsay Issue**

Defendant contends that Kuehnlein's testimony regarding Defendant's interrogation is inadmissible hearsay because Kuehnlein relied on Davalos' translation of what Defendant said. (Def. Motion at 4). Whether Kuehnlein's testimony regarding Defendant's statements constitutes hearsay depends on whether Davalos can be fairly considered a "language conduit" for Defendant. *United States v. Nazemian*, 948 F.2d 522, 526 (9th Cir. 1991) (citing *United States v. Santana*, 503 F.2d 710, 717 (2nd Cir. 1974)). To the extent that Davalos was a mere "language conduit" for Defendant during Kuehnlein's interrogation of Defendant, Kuehnlein's testimony regarding Plaintiff's statements are characterized as non-hearsay under Federal Rule of Evidence 801(d)(2)(C). *Id*.

5

In *Nazemian*, the Ninth Circuit established a four factor test for determining whether an interpreter adds an additional layer of hearsay: (1) which party supplied the interpreter; (2) whether the interpreter had any motive to mislead or distort; (3) the interpreter's qualifications and language skill; and (4) whether actions taken subsequent to the conversation were consistent with the statements as translated. *Id.*; *United States v. Garcia*, 16 F.3d 341, 342-43 (9th Cir. 1994). The fourth prong of the *Nazemian* test does not apply directly to the situation presented by Defendant's motion, because unlike the forward looking statements at issue in *Nazemian* and *Garcia*, Defendant's statement concerned past occurrences. However, the rationale for the fourth prong of the *Nazemian* test is that where a translation is corroborated by the declarant's subsequent actions, the translation is more reliable. *See Santana*, 503 F.2d at 717 (noting that subsequent consistent conduct constituted an "external indicium of reliability"). Thus, where a translation concerns retrospective statements regarding past occurrences, whether the record contains external indicum of the statement's reliability is the relevant consideration under *Nazemian*. *Id*.

### a) Which Party Provided the Interpreter

Here, the Government in effect "provided" the interpreter used during Defendant's interrogation, because Davalos was translating the interrogation at the direction of Kuehnlein. However, this factor does not weigh heavily in favor of Defendant, because Davalos had no prior relationship with Kuehnlein or the DEA and was not hand-selected by Kuehnlein. Rather, Davalos was chosen simply because he was present, spoke Spanish, and routinely served as a

translator at the Tulare County Jail.  The fact that Davalos was a law enforcement official is of little weight.  As a correctional officer at the Tulare County Jail, Davalos is a county employee, not a federal law enforcement official, he had no stake in the outcome of the case, and his interests as a correctional officer are not congruent with the interests of the DEA or federal government.  *Compare United States v. Da Silva*, 725 F.2d 828, 832 (2nd Cir. 1983) (customs official who translated during DEA interrogation held to be no more than language conduit).

### b) Motive to Mislead or Distort

Defendant presents no evidence of any motive on the part of Davalos to misrepresent or distort Defendant's testimony.  Davalos did not know Defendant and knew nothing about the case.  Conclusory allegations of bias are insufficient to prevent a finding that a translator was a language conduit.  *See Nazemian*, 948 F.2d at 527 (rejecting defendant's claim where defendant could not point to "specific evidence of bias on the part of the interpreter" other than the fact that the government informer provided the interpreter); *Garcia*, 16 F.3d 343 (rejecting bias claim where no evidence on the record supported defendant's contention).  There is no evidence to suggest that Davalos was intentionally dishonest in his translation.

### c) Language Skill

Davalos testified that he has spoken Spanish his entire life, and that Spanish was the primary language spoken in his home. Davalos also testified that he routinely speaks to prisoners in Spanish, and that he routinely serves as an interpreter at the jail.  There is no evidence that Davalos has any formal training in

7

interpreting. Nevertheless, Davalos' language skills weigh in favor of the Government.

### d) Corroboration

The record contains external indicia of reliability that corroborate Davalos' translation. Defendant's statements, as translated by Davalos, are consistent with other evidence on the record regarding the parties to the operative drug transaction, Defendant's employment at the Hamstra Dairy, and Defendant's name, address, and alias. The risk of a false translation is overcome by the corroborating information Davalos had no way to know. Absent evidence that the interpreter had any motive to misrepresent or was linguistically incompetent, the fact that a declarant's translated statement is consistent with other evidence on the record weighs heavily in favor of finding that the interpreter was a declarant's language conduit.

Based on the entire record, the *Nazemian* test for establishing that Davalos was Defendant's language conduit has been satisfied. Davalos interpretation of Defendant's responses to Kuehnlein's questions did not create an additional layer of hearsay, and Kuehnlein's testimony regarding what Defendant said during his interrogation is characterized as non-hearsay under Rule 801(d)(2)(C) under the language conduit theory. *Nazemian*, 948 F.2d at 526.

### 2. Confrontation Clause

Defendant contends that his confrontation clause rights were violated because, despite the fact that Davalos testified at trial, Davalos' lack of memory regarding Defendant's interview rendered him constructively "unavailable" and thus not subject to cross-

**8**

examination. (Def. Motion at 6). The Supreme Court rejected Defendant's argument in *United States v. Owens*, 484 U.S. 554, 559-560 (1988):

> "The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion. To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." *Delaware v. Fensterer*, 474 U.S. 15, 21-22 (1985)...¶ the Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987), quoting *Fensterer*, supra, at 20 (emphasis added); *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *Ohio v. Roberts*, 448 U.S. 56, 73, n. 12 (1980).

The *Owens* Court specifically rejected the notion that a witness who cannot remember the subject matter of his prior statement is "unavailable" and not subject to cross-examination:

> Ordinarily a witness is regarded as "subject to cross-examination" when he is placed on the stand, under oath, and responds willingly to questions. Just as with the constitutional prohibition, limitations on the scope of examination by the trial court or assertions of privilege by the witness may undermine the process to such a degree that meaningful cross-examination within the intent of the Rule no longer exists. But that effect is not produced by the witness' assertion of memory loss

*Id.* at 561-62.[1]

Defendant contends that Owens is not dispositive for two reasons: (1) "*Owens* is limited to a statement that by definition is

---

[1] Although the Supreme Court was describing "unavailability" within the meaning of Federal Rule of Evidence 804(a) in this passage, the Court's analysis reveals that a declarant's memory loss at the time of trial does not preclude meaningful, effective cross-examination of the declarant.

not hearsay;" and (2) "Owens would be called into question by...*Crawford v. Washington*, 541 U.S. 36 (2004)."  As discussed above, because Davalos was a mere language conduit, Keuhnlien's testimony regarding what Defendant said during his interrogation constitutes non-hearsay under Rule 801(d)(2)(C).  *Crawford* is of no help to Defendant.  The *Crawford* Court expressly noted that "[i]t is...irrelevant that the reliability of some out-of-court statements 'cannot be replicated, even if the declarant testifies to the same matters in court'. The [Confrontation] Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it."  541 U.S. at 59 n.9 (citations omitted).  Despite the fact that Davalos could not remember interpreting Defendant's interrogation, defense counsel was free to cross-examine him in an attempt to impeach him on the grounds of credibility, lack of formal interpreter training, and his language skills; Defendant cites no authority in support of the notion that anything more is required under the Confrontation Clause.

Under the law of the Ninth Circuit, the Confrontation Clause is satisfied so long as a Defendant has an opportunity "to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Vasquez v. Kirkland*, 572 F.3d 1029, 1038 (9th Cir. 2009) (citing *Davis v. Alaska*, 415 U.S. 308, 318 (1974)) *accord United States v. Bridgeforth*, 441 F.3d 864, 868 (9th Cir. 2006) ("A limitation on cross examination does not violate the Confrontation Clause unless it...denies the jury sufficient information to appraise the biases and motivations of the witness.") (citation omitted).  Defendant's counsel had an

**10**

opportunity to cross-examine Davalos, but simply chose not to take it.  Because Defendant has not demonstrated evidentiary error or a violation of his rights under the Confrontation Clause, his Rule 33 motion is DENIED.

**ORDER**

For the reasons stated, IT IS ORDERED:

1) Defendant's Rule 29 motion is DENIED; and

2) Defendant's Rule 33 motion is DENIED.

IT IS SO ORDERED.

**Dated:   September 1, 2010**                    **/s/ Oliver W. Wanger**
                                                  UNITED STATES DISTRICT JUDGE